UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CALVIN ANDRE WILLIAMS,

      Petitioner,

v.                                      CASE NO. 6:09-cv-1809-Orl-31KRS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.  Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 9).  Petitioner filed a reply (Doc. No. 13).

Petitioner alleges five claims for relief in his petition: (1) the trial court committed an ex post facto violation by charging him with, and convicting and sentencing him pursuant to section 893.135(6), Florida Statutes, which did not go into effect until after he committed the crime; (2) trial counsel rendered ineffective assistance by failing to hold a *Frye*[1] hearing, failing to move to suppress fingerprint evidence, and failing to depose the

_____

[1]*Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

State's expert witness; (3) trial counsel was ineffective for failing to object to the commingling of the bags of cocaine that were admitted at trial; and (4) appellate counsel was ineffective for failing to argue on appeal that the trial court abused its discretion in denying his motion to dismiss due to prosecutorial misconduct.   Respondents argue that the instant petition for writ of habeas corpus is untimely filed.   However, as discussed hereinafter, the Court finds that the petition is timely, but Petitioner is not entitled to relief on the merits of his claims.

## I.   *Procedural History*

Petitioner was charged by amended information with trafficking in cocaine (count one), use or possession of drug paraphernalia (count two), and felony driving while license revoked as a habitual felony offender (count three) (App. A at 15).   The State filed a notice of its intent to seek sentencing as a habitual felony offender ("HFO").   *Id.* at 74.   After a jury trial, on June 21, 2002, Petitioner was convicted as charged of all three counts.   *Id.* at 76-77. The trial court sentenced Petitioner as an HFO to a twenty-five year term of imprisonment for count one (which carried a seven-year mandatory minimum sentence) to 594 days imprisonment for count two, and to a five-year term of imprisonment for count three.   *Id.* at 180-84.   The trial court ordered the sentences in each count to run concurrently to each other.   *Id.* at 187.

On April 30, 2004, the Fifth District Court of Appeal affirmed Petitioner's convictions but struck the seven-year mandatory minimum provision of his sentence for trafficking in cocaine.   *Williams v. State*, 873 So. 2d 444, 445 (Fla. 5th DCA 2004).   The State

appealed, and on April 21, 2005, the Florida Supreme Court quashed the decision of the appellate court and remanded for reconsideration. *State v. Jones*, 908 So. 2d 1054, 1056 (Fla. 2005). On remand, the Fifth District Court of Appeal withdrew its previous opinion and *per curiam* affirmed Petitioner's judgment and sentence on June 7, 2005 (App. A). Mandate was issued on the same day. *Id.*

On August 27, 2004,[2] while Petitioner's direct appeal was pending, he filed a Rule 3.800(a) motion to correct illegal sentence pursuant to the Florida Rules of Criminal Procedure (App. C). The state trial court denied the motion on September 22, 2004. *Id.* Petitioner appealed, but the appeal was dismissed for lack of jurisdiction on November 17, 2004. *Id.*

On June 29, 2005, Petitioner filed a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel with the Fifth District Court of Appeal (App. D). The appellate court denied the petition on July 15, 2005. *Id.* Petitioner then filed a federal habeas corpus petition on July 28, 2005. *See* case number 3:05-cv-754-J-25TEM, Doc. No. 1. The Court dismissed the petition without prejudice as Petitioner had a pending state court action and had not fully exhausted his claims. *Id.* at Doc. No. 26.

---

[2]This is the filing date under the "mailbox rule." *See Thompson v. State*, 761 So. 2d 324, 326 (Fla. 2000) ("[W]e will presume that a legal document submitted by an inmate is timely filed if it contains a certificate of service showing that the pleading was placed in the hands of the prison or jail officials for mailing on a particular date, if that the [sic] pleading would be timely filed if it had been received and file-stamped by the Court on that particular date.").

On December 13, 2005, Petitioner filed a Rule 3.850 for post-conviction relief, alleging five claims for relief (App. E).  On April 20, 2006, the state trial court summarily denied the petition.  *Id.*  The state court noted that claim A was dismissed without prejudice to amend the claim within thirty days.  *Id.*  Petitioner moved for rehearing and amended claim A.  *Id.*  The state court denied the motion for rehearing and the amendment to claim A.  *Id.*  Petitioner appealed, and on July 31, 2007, the appellate court *per curiam* affirmed the lower court's denial of his Rule 3.850 motion for post-conviction relief.  *Id.*  Mandate was issued on August 17, 2007.  *Id.*

Petitioner filed a second Rule 3.800(a) motion on November 20, 2007 (App. F).  On April 28, 2008, the state court denied the motion, finding Petitioner's claims are not cognizable in a Rule 3.800(a) motion, and noting that the motion could not be converted to a Rule 3.850 motion because such a motion would be untimely.  *Id.*  On July 15, 2008, the appellate court entered its *per curiam* affirmance.  *Id.*  Mandate was issued on August 1, 2008.  *Id.*  On August 14, 2008, Petitioner filed a second Rule 3.850 motion for post-conviction relief (App. G).  The state trial court denied the motion on August 29, 2008, finding it was untimely and successive.  *Id.*  Petitioner did not appeal from the denial of that motion.

Next, Petitioner filed a motion for relief from judgment and/or motion to correct illegal sentence on November 26, 2008 (App. H).  On January 16, 2009, the state court denied Petitioner's motion, finding the Rule 3.800(a) motion was successive and the claims were procedurally barred.  *Id.*  The Fifth District Court of Appeal *per curiam* affirmed the

4

lower court's denial of this motion on July 14, 2009. *Id.* Mandate was issued on September 25, 2009. *Id.* Petitioner filed his federal habeas corpus petition on October 19, 2009 (Doc. No. 1).

## II.   *Petitioner's Habeas Corpus Petition Is Timely*

Pursuant to 28 U.S.C. § 2244:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

  (A)   the date on which the judgment became final by the consideration of direct review or the expiration of the time for seeking such review;

  (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

  (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

  (D)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

In the present case, the state appellate court entered its *per curiam* affirmance on

remand from the Florida Supreme Court on June 7, 2005.  Petitioner then had ninety days,

or through September 6, 2005,[3] to petition the United States Supreme Court for a writ of

certiorari.  *See* Sup. Ct. R. 13.[4]  Thus, under § 2244(d)(1)(A), the judgment of conviction

became final on September 6, 2005, and Petitioner had through September 6, 2006, absent

any tolling, to file a federal habeas petition.  *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir.

2002) (holding that the one-year period of limitation does not begin to run until the ninety-

day period for filing a petition for certiorari with the United States Supreme Court has

expired).

Under § 2244(d)(2), the one-year period would be tolled during the pendency of any

"properly filed" state post-conviction proceedings.  Petitioner's state habeas petition

alleging ineffective assistance of counsel was filed and denied prior to the commencement

of the one-year limitations period, thus, it did not toll any portion of the one-year period.

Additionally, Petitioner's first federal habeas corpus action, filed on July 28, 2005, did not

---

[3]September 5, 2005, was Labor Day; therefore, the deadline was extended through
the next business day, Tuesday, September 6, 2005.

[4] Rule 13 provides as follows:

> The time to file a petition for a writ of certiorari runs from the date of
> entry of the judgment or order sought to be reviewed, and not from the
> issuance date of the mandate (or its equivalent under local practice).  But if
> a petition for rehearing is timely filed in the lower court by any party, the
> time to file the petition for a writ of certiorari for all parties (whether or not
> they requested rehearing or joined in the petition for rehearing) runs from
> the date of the denial of the petition for rehearing or, if the petition for
> rehearing is granted, the subsequent entry of judgment.

Sup. Ct. R. 13(3).

toll the limitations period as it was dismissed without prejudice. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (holding "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2242(d)(2)."); *Day v. Hall*, 528 F.3d 1315, 1318 (11th Cir. 2008).

On December 13, 2005, Petitioner filed a Rule 3.850 motion for post-conviction relief. This motion was a properly filed state post-conviction proceeding, and thus, the time for filing a federal habeas petition was tolled from December 13, 2005, through August 17, 2007, the date the mandate was issued on appeal from the denial of the motion. A total of 98 days of the one-year limitations period elapsed before Petitioner filed his Rule 3.850 motion.

Petitioner also filed a Rule 3.800(a) motion on November 20, 2007. Respondents argue that this motion did not toll the one-year statute of limitations period. The state court denied the motion on April 28, 2008, finding the claim was not cognizable in a Rule 3.800(a) motion and that the claim could not be raised in a Rule 3.850 motion because such a motion would be untimely. Although the state court noted that Petitioner's claim should have been raised in a Rule 3.850 motion, the state court did not treat the motion as a Rule 3.850 motion and dismiss it as untimely filed but instead addressed the merits of the claim. Thus, the Court finds that the Rule 3.800(a) motion filed on November 20, 2007, was properly filed and tolled the one-year limitations period. *See Artuz v. Bennett*, 531 U.S. 4, 8 (2000) ("an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."). The time for filing a

federal habeas petition was tolled from November 20, 2007, through August 1, 2008, the date the mandate was issued on appeal from the denial of the motion.  A total of 95 days of the one-year limitations period elapsed before Petitioner filed his second Rule 3.800(a) motion.

Petitioner filed a second Rule 3.850 motion on August 14, 2008.  The filing of Petitioner's third Rule 3.850 motion did not toll the time for filing a federal petition because the motion was untimely filed.  *Sweet v. Secretary, Dep't of Corr.*, 467 F.3d 1311, 1318 (11th Cir. 2006) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).") (quotation omitted)).

Petitioner then filed a third Rule 3.800(a) motion on November 26, 2008.  This motion was denied as successive and procedurally barred.  However, contrary to Respondents' assertions, this motion was properly filed and did toll the one-year limitations period.  Under Florida law, a Rule 3.800(a) motion may be filed at any time and successive motions are permissible.  *See Moss v. State*, 9 So. 3d 674, 675 (Fla. 3d DCA 2009).  Although the state court denied the claims as successive and procedurally barred, this determination does not render the Rule 3.800(a) motion improperly filed.  *See Wesley v. Secretary, Dep't of Corr.*, No. 8:06-cv-1646-T-24MAP, 2008 WL 1994998, at *3 (M.D. Fla. May 8, 2008) (stating "[a] state court's determination that a state application for post-conviction relief is precluded by a state procedural bar does not render the application improperly filed because '[o]nly the individual claims, and not the application containing those claims,

8

can be procedurally defaulted under state law.'") (quoting *Artuz*, 531 U.S. at 8). The *Wesley* court found that the petitioner's second Rule 3.800(a) motion did toll the limitations period because it was a properly filed application for post-conviction review, despite the fact that the claims contained in the motion were successive and procedurally barred. *Id.*

Consequently, the period between November 26, 2008, and September 25, 2009, the date the state appellate court issued its mandate on appeal, was tolled. A total of 117 days elapsed before Petitioner filed his third Rule 3.800(a) motion, therefore, Petitioner had 55 days remaining of the one-year period to file his federal habeas petition. Petitioner's federal petition, filed 24 days later on October 19, 2009, was timely filed.

## III.    *Legal Standards*

### A.    *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[5]  *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing

---

[5]In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.      Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984),

established a two-part test for determining whether a convicted person is entitled to relief

on the ground that his counsel rendered ineffective assistance: (1) whether counsel's

performance was deficient and "fell below an objective standard of reasonableness"; and

(2) whether the deficient performance prejudiced the defense.[6]  *Id.* at 687-88.  A court must

adhere to a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance.   *Id.* at 689-90.   "Thus, a court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the

facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690; *Gates v.

Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective

assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the
> test even what most good lawyers would have done. We ask only whether
> some reasonable lawyer at the trial could have acted, in the circumstances,
> as defense counsel acted at trial. Courts also should at the start presume
> effectiveness and should always avoid second guessing with the benefit of
> hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad
> discretion to represent their clients by pursuing their own strategy. We are
> not interested in grading lawyers' performances; we are interested in

---

[6]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court
clarified that the prejudice prong of the test does not focus solely on mere outcome
determination; rather, to establish prejudice, a criminal defendant must show that counsel's
deficient representation rendered the result of the trial fundamentally unfair or unreliable.

whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

IV.     *Analysis*

A.      *Claim One*

Petitioner claims that the trial court committed an ex post facto violation by convicting and sentencing him pursuant to section 893.135(6), Florida Statutes, which did not go into effect until after he committed the crime.  Petitioner states that he was arrested on March 16, 2001, and later charged with possessing 200 grams or more but less than 400 grams of cocaine or a mixture containing cocaine under section 893.135(6).  Petitioner contends that subsection 6 did not go into effect until July 1, 2001.

Respondents argue that ground one is procedurally barred.  Petitioner raised the instant claim in his second Rule 3.800(a) motion to correct illegal sentence (App. F).  The trial court determined that the claim was procedurally barred because it should have been raised in his first Rule 3.850 motion for post-conviction relief.  *Id.*  The Fifth District Court of Appeal affirmed *per curiam*.  *Id.*  Petitioner then raised this claim in his second Rule 3.850 motion for post-conviction relief (App. G).  The state court again found the claim to be procedurally barred because Petitioner failed to raise it in his first Rule 3.850 motion.  *Id.*  Petitioner did not appeal the denial of that motion.

12

A *per curiam* affirmance of a trial court's finding of procedural default is a sufficiently clear and express statement of reliance on an independent and adequate state ground to bar consideration by the federal courts. *Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990); *see also Ferguson v. Secretary Department of Corrections,* 580 F.3d 1183, 1218 (11th Cir. 2009); *Swain v. Singletary*, 42 F. Supp. 2d 1284, 1290 (M.D. Fla. 1999).   Therefore, the Court will apply the state procedural bar and will not address the claim on the merits. "[T]he clear inference to be drawn from the appellate court's per curiam affirmance of the trial court's decision explicitly based on procedural default is that the court accepted not only the judgment but the reasoning of the trial court." *Harmon*, 894 F.2d at 1273. Therefore, this Court will apply the state procedural bar.

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense, in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'Actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet the actual innocence standard, a habeas petitioner must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (internal quotation marks and citation omitted). In addition, actual innocence claims must be supported "with new reliable evidence - - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial." *Schlup*, 513 at 324.

Petitioner has not shown either cause or prejudice that would excuse any procedural default. Likewise, he has not shown the applicability of the actual innocence exception. A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, claim one is procedurally barred from review by this Court.

To the extent that Petitioner argues that the application of section 893.135(6) to his case results in a fundamental miscarriage of justice, Petitioner has not demonstrated that he is entitled to relief. First, Petitioner has not alleged or demonstrated that he is actually innocent. Moreover, to the extent that Petitioner contends that his conviction and sentence are illegal because the State failed to prove that the "substance" he was charged with possessing contained 200 grams or more of cocaine, Petitioner's claim fails. Petitioner was

charged with violating section 893.135(1)(b)1.b., Florida Statutes . That section states "[a]ny person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine, as described in s. 893.03(2)(a)4., or of any mixture containing cocaine, but less than 150 kilograms of cocaine or any such mixture, commits a felony of the first degree." *Id.* The statute further states that if the quantity involved is 200 grams or more but less than 400 grams, a defendant shall be sentenced to a mandatory minimum term of 7 years in prison. At trial, the State proved that Petitioner possessed 200 grams or more of crack cocaine but less than 400 grams of crack cocaine.  The weight of the crack cocaine was 347.4 grams (App. B at 768).

Petitioner claims that the State improperly applied section 893.135(6), Florida Statutes, to him, which states, in relevant part:

> A mixture, as defined in s. 893.02, containing any controlled substances described in this section includes, but is not limited to, a solution or a dosage unit, including but not limited to, a pill or tablet, containing a controlled substance.  For the purpose of clarifying legislative intent regarding the weighing of a mixture containing a controlled substance described in this section, the weight of the controlled substance is the total weight of the mixture, including the controlled substance and any other substance in the mixture.  If there is more than one mixture containing the same controlled substance, the weight of the controlled substance is calculated by aggregating the total weight of each mixture.

This portion of the statute became effective on July 1, 2001, after Petitioner was alleged to have committed the instant crimes.  However, subsection six was not applied to Petitioner's case because he was charged with trafficking in crack cocaine.  The legislature amended

15

section 893.135 in 2001 in response to the Florida Supreme Court's decision in *Hayes v. State*, 750 So. 2d 1 (Fla. 1999), in which the court held that the drug trafficking statute did not apply to possession of hydrocodone in an amount less than 15 milligrams per dosage unit.   The legislature added subsection six to clarify that the weight of a controlled substance is the total weight of the mixture, including the controlled and non-controlled substances.   *See State v. Boyette*, 911 So. 2d 891, 892 (Fla. 1st DCA 2005); Ch. 2001-55, § 1, Laws of Fla. (specifically noting that the amendment of section 893.135 related to the weighing of hydrocodone).

Petitioner was not charged with trafficking a mixture, such as a prescription drug like hydrocodone, that contains both controlled and non-controlled substances.   There is no indication that the State committed an ex post facto violation because section 893.135(6) was not applied in this case.   Petitioner does not meet the fundamental miscarriage of justice exception and thus the instant claim is procedurally barred.

### B.      *Claim Two*

Petitioner claims that trial counsel rendered ineffective assistance by failing to move for a *Frye* hearing and by failing to move to suppress the fingerprints lifted from the evidence at the scene of the crime.   Petitioner also states that trial counsel was ineffective for failing to depose the State's expert witness, Mr. Brackman, who testified regarding the fingerprints and found that Petitioner's fingerprints matched those at the scene of the crime.   Petitioner raised this claim in his first Rule 3.850 motion for post-conviction relief (App. E).   The state trial court denied the claim pursuant to *Strickland*.   *Id.*   On appeal, the

16

Fifth District Court of Appeal affirmed *per curiam.  Id.*

In *Frye*, a federal court held that a trial judge must (1) determine whether expert testimony will assist the jury in understanding the evidence or in determining a fact at issue and (2) whether the expert's testimony is based upon a scientific principle or discovery that is "sufficiently established to have gained general acceptance in the particular field in which it belongs." 293 F. at 1014.  Florida courts utilize the *Frye* test to determine whether admission of expert testimony concerning new or novel scientific principles is proper.  *See Ramirez v. State*, 651 So. 2d 1164, 1167 (Fla. 1995).

A review of the record reveals that at trial, during crime laboratory analyst Paul Brackman's ("Brackman") testimony, a conference was held outside of the presence of the jury (App. B at T 988).  Defense counsel wanted to challenge Brackman's methodology for testing fingerprints.  *Id.* at 991-92.  The State objected, arguing that the fingerprint testing procedure was not a novel procedure pursuant to *Frye.  Id.* at 992-93.  Defense counsel countered that she had the right to ask the expert whether his opinion was based upon a reliable body of scientific or specialized knowledge.  *Id.* at 993.  After a lengthy discussion, the trial judge found that fingerprint analysis was readily accepted in the scientific community.  *Id.* at 994-1014.

Contrary to Petitioner's assertions, it appears that a *Frye* hearing was held during trial.  Although Petitioner contends that the *Frye* hearing should have been held prior to trial, and that defense counsel should have moved to suppress the fingerprint evidence, Petitioner has not demonstrated that had counsel moved for a *Frye* hearing prior to trial

17

and moved to suppress the fingerprint evidence that these motions would have been granted. Florida courts have found fingerprint comparison evidence to be reliable pursuant to *Frye* "[f]or over a hundred years." *State v. Armstrong*, 920 So. 2d 769, 771 (Fla. 3d DCA 2006).

Additionally, to the extent that Petitioner argues that trial counsel failed to depose Brackman, the Court finds that this contention is conclusively refuted by the record. Defense counsel, the State, and the trial court noted several times during trial that defense counsel deposed witness Brackman (App. B at 992, 1001, 1011). Petitioner has not demonstrated that counsel acted in a deficient manner or that any such deficiency resulted in prejudice. The Court finds no basis to conclude that the state court's determination of this claim was contrary to, or involved an unreasonable application of, *Strickland*. Accordingly, claim two is denied pursuant to § 2254(d).

### C.     Claim Three

Petitioner contends that trial counsel was ineffective for failing to object to the commingling of the bags of cocaine that were admitted as evidence at trial. Specifically, Petitioner claims that testimony at trial revealed that the contents of the 11 or 12 bags of cocaine were combined together without testing each of the individual packets. Petitioner raised this claim in his Rule 3.850 motion for postconviction relief (App. E). The state court denied the claim, stating the following:

> Defendant's claim fails as to the prejudice prong of *Strickland, supra*. Because Defendant's charges involved crack cocaine, not powder, an allegation of mixing samples would not have changed the outcome of his trial. *Lyons v.*

18

*State*, 807 So. 2d 709, 711 (Fla. 5th DCA 2002).  The Court denies relief on the basis of legal insufficiency.

*Id.*  On appeal, the Fifth District Court of Appeal *per curiam* affirmed.  *Id.*

Petitioner has not demonstrated that he is entitled to relief on this claim.  As noted by the state trial court, the rule against commingling powder cocaine seized from separate containers does not apply to rock or crack cocaine.  *Lyons v. State*, 807 So. 2d 709, 710 (Fla. 5th DCA 2002) (citing *Collins v. State*, 717 So. 2d 186 (Fla. 5th DCA 1998); *Bond v. State*, 538 So. 2d 499 (Fla. 3d DCA 1989); *Asmer v. State*, 416 So. 2d 485 (Fla. 4th DCA 1982)).  The evidence at trial indicates that Daytona Beach Police Officer Alexander Manjasek found 11-12 bags containing crack cocaine, and not powder cocaine, in Petitioner's vehicle (App. B at 229, 240-42).  Sergeant William Walden testified that he did not recall ever seeing any powder cocaine.  *Id.* at 539.

Christine May, senior crime laboratory analyst for the Florida Department of Law Enforcement, testified that when she tested the cocaine, it was an off-white, chunky substance.  *Id.* at 776.  May stated that one of the bags containing the substance appeared to have gotten wet, and at the time of trial, was a "wet-looking goo now."  *Id.*  However, May reiterated that when she tested the substance it was solid or chunky, appearing to be what is commonly referred to as crack cocaine.  *Id.* May testified that in contrast, powder cocaine is a white-looking shiny powder.  *Id.* at 776-77.

Because the substance found in Petitioner's vehicle was crack cocaine, and not powder cocaine, Petitioner cannot establish that counsel's failure to object resulted in

19

prejudice.  Any objection to the commingling on the crack cocaine would have been denied pursuant to Florida law.  Petitioner has not demonstrated that the state court's determination of this claim was contrary to, or resulted in an unreasonable application of, federal law.  Accordingly, claim three is denied pursuant to § 2254(d).

> D.   *Claim Four*

Petitioner claims that appellate counsel was ineffective for failing to argue on appeal that the trial court abused its discretion in denying his motion to dismiss due to prosecutorial misconduct.  Petitioner contends that the prosecutor knowingly elicited false testimony from witnesses.  Petitioner raised this ground in his state habeas corpus petition alleging ineffective assistance of counsel (App. D).  The Fifth District Court of Appeal denied this claim without discussion.  *Id.*

Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*.  *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).  Appellate counsel need not brief issues reasonably considered to be without merit.  *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984).  Appellate counsel must be allowed to exercise his or her reasonable professional judgment in selecting those issues most promising for review, and "[a] brief that raises every colorable issue runs the risk of burying good arguments."  *Jones v. Barnes*, 463 U.S. 745, 753 (1983).  In order to establish prejudice, the Court must first review the merits of the omitted claim.  *See Heath*, 941 F.2d at 1132.  Counsel's performance will be deemed prejudicial if the Court finds that "the neglected claim would have a reasonable probability of success on appeal."  *Id.*

At the close of the evidence, defense counsel moved to dismiss the case based on prosecutorial misconduct (App. B at 1170). Counsel argued the prosecutor elicited false testimony on several occasions and had a duty to correct the false testimony. *Id.* Counsel pointed to the testimony of Officer Manjasek and Sergeant Burkett, which related to the events that occurred on the night Petitioner was arrested and the chain of custody of the cocaine. *Id.* Counsel noted that both Manjasek and Burkett testified that they transported the cocaine to the police station. *Id.* at 1170-71. Moreover, counsel argued that Officer Dellarosa stated, in his deposition, that he secured and transported the cocaine. *Id.* at 1171-72.

Additionally, counsel pointed to Investigator Capri's deposition and Sergeant Walden's testimony, in which they gave differing versions of when Petitioner confessed to his involvement in the crime. *Id.* at 1175. Defense counsel stated Capri testified in his deposition that Petitioner gave him four different statements, whereas Walden allegedly testified at trial that Petitioner always admitted his involvement. *Id.* After a lengthy discussion, the trial court found that the officers testified inconsistently or made inconsistent statements, but concluded there was no indication of perjury in this case. *Id.* at 1200. The court further noted that even if witnesses had committed perjury, there was no indication that the State was aware of the perjured testimony. *Id.* at 1200. The court denied the motion to dismiss. *Id.* at 1201.

A conviction obtained through the knowing use of perjured testimony is fundamentally unfair and a violation of due process. *United States v. Bagley*, 473 U.S. 667,

677 (1985); *United States v. Agurs*, 427 U.S. 97, 103 (1976). "[T]he falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995) (quoting *Agurs*, 427 U.S. at 103).

A review of the record indicates Officer Manjasek testified that after he found the crack cocaine in Petitioner's vehicle and transported it to the police station, Officer Dellarosa took the substance into the police station to be weighed (App. B at 255, 314). Manjasek stated that Officer Dellarosa and Sergeant Burkett were riding in the same vehicle. *Id.* at 255. After the arrestees were transported to the Volusia County Jail, Manjasek, Sergeant Walden and Investigator Capri sorted and tagged the evidence. *Id.* at 316. Manjasek also testified that no one told him what to say at trial and that he was testifying from his own recollection. *Id.* at 342. Sergeant Burkett testified that he took the cocaine to the police station with Officer Dellarosa. *Id.* at 372. Sergeant Walden stated that he inspected the cocaine when it was inside a police vehicle and noted that Officer Manjasek was present at that time. *Id.* at 479.

Sergeant Walden also testified that when Petitioner gave his statement, he told the officers that he was willing to cooperate. *Id.* at T 445. Petitioner told him that he had purchased the drugs in Fort Lauderdale from his supplier. *Id.* at 445-46. Walden did note that Petitioner changed his story several times and minimized his role. *Id.* at 517. However, Walden did not recall Petitioner denying any involvement with the crime. *Id.*

The above testimony shows that the officers merely gave inconsistent testimony

regarding who transported the cocaine to the police station and whether Petitioner admitted his involvement in the crime right away or gave several false stories to the officers before admitting his involvement. Petitioner merely speculates that the witnesses committed perjury. Moreover, Petitioner has not alleged or shown that the prosecution knowingly failed to correct any of the alleged perjured statements. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio v. United States*, 405 U.S. 150, 153-54 (1972).

Petitioner has not demonstrated that appellate counsel failed to raise a claim that had a reasonable probability of success on appeal. The state court's determination of this claim was not contrary to, or an objectively unreasonable application of, federal law, nor did it result in an unreasonable determination of the facts in light of the evidence presented. Accordingly, claim four is denied pursuant to § 2254(d).

## V. *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a Petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of

a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934.  However, a prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable.  Petitioner has failed to make a substantial showing of the denial of a constitutional right.  The Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus filed by Calvin Andre Williams (Doc. No. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  The Clerk of the Court shall enter judgment accordingly.

2.      Petitioner is **DENIED** a certificate of appealability.

2.      The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 2nd day of June, 2011.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-3 6/2
Counsel of Record
Calvin Andre Williams